THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. FRANK BOWEN, PLAINTIFF IN ERROR.

Submitted July 7, 1919—Decided November 17, 1919.

An averment in an indictment that defendant, on a certain day * * * in a certain house maintained by him in the city of B., in the county of C., habitually and unlawfully sold in quantities of one gallon certain spirituous, vinous, malt and brewed liquors (which are specified) to certain persons named, and to divers other persons unknown to the grand jury, without having a license for that purpose, is sufficient under section 74 of the Criminal Procedure act. *Comp. Stat.*, p. 1844.

On writ of error to the Supreme Court, in which the following *per curiam* was filed:

"The defendant below was convicted in the Cumberland Quarter Sessions of the illegal sale of liquor. He brings up the entire record of the trial and assigns error upon his bill of exceptions.

"Upon examination of the points thus raised and argued we find no reason to disturb the judgment.

"The first point to be considered is, that the third count of the indictment, upon which alone the defendant was convicted, does not charge an indictable offence.

"But this is not so. The count charged, in substance, that the defendant, on a certain day and on divers other days between that day and the taking of the inquisition, in a certain house kept and maintained by him in the city of Bridgeton,

in the county of Cumberland, habitually and unlawfully sold in quantities of one gallon certain spirituous, vinous, malt and brewed liquors, which are specified, to certain persons named, and to divers other persons unknown to the grand jury, without having a license for that purpose. That is sufficient under section 74 of the Criminal Procedure act. *Comp. Stat., p.* 1844; *State* v. *Terry,* 72 *N. J. L.* 375; *Parker* v. *State,* 61 *Id.* 308.

"The next point is, that a verdict should have been directed for the defendant.

"We think not. The defendant was the 'steward' of the so-called 'Elite Social Club,' conducted in the 'hay mow of a livery stable.' There was evidence from which the jury could, and did, find that the place was under the defendant's management and control. He carried the key to the place where the liquors were kept. He supplied the liquors upon the moneys therefor being deposited in a box.

"The defendant did not testify nor did he produce any evidence. He claims that the state's evidence showed the sales to have been made in Philadelphia and not in Bridgeton. He devoted his cross-examination of the witnesses to attempting to show the club system to have been this: Having the members when they wanted beer to write an 'envelope order' on a Philadelphia brewing company, enclose therein the money, and put it through a hole in the wall into a box, whence it was transmitted to the Philadelphia brewing company, to whom it was addressed by the sender, and the order there filled and sent to the individual member by express.

"Now, it was clearly open to the jury to find that this alleged system was a mere pretence. It is unnecessary for us to determine what would have been its legal effect, if proved. It was not proved. It broke down in several particulars.

"One witness testified that defendant had charge of the room; that the witness procured beer and defendant waited upon him; that witness put the money in an envelope addressed to the *Elite Social Club,* put the envelope through a 'slit' in the partition dividing the room, and then defendant

got the beer for him out of common stock; that witness did not put the name of any brewing company on the envelope. He was asked:

" '*Q*. Did you get your beer right away?

" '*A*. No, not as rule; wait a little while.

" '*Q*. What did you wait for?

" '*A*. Well, he might be busy waiting on someone else, or something, cleaning up the room.'

"On cross-examination he was asked:

" '*Q*. Now, when you exhausted your 24 bottles of beer or your whiskey and you would go in and put in your money, then what would happen?

" '*A*. Well, sometimes I would have to wait.'

"Another witness testified that the defendant had charge of the place and had the keys; that the system was to put the money in an *unstamped* envelope and put it in the 'slit.'

" '*Q*. Well, after you put the money in the envelope and deposited it in this box, what would you then do?

" '*A*. I went and got my rum.'

"In that way he got whiskey by the quart and beer by the case of twenty-four bottles. These he got out of the stock room in the presence of the defendant.

"On cross-examination he said:

" '*Q*. Supposing you did not have any [beer] there?

" '*A*. What? I would quit the club.'

"Other witnesses testified that the stock room was locked at times and the defendant had the key; that they filled out envelopes, put it with money in the 'slit,' went and took the beer and drank it. Several witnesses say that they 'did not direct the envelope to anybody at all.'

"This and other testimony, if believed, showed repeated sales by the defendant at the club room in Bridgeton.

"The defendant points to other testimony given by the same witnesses on cross-examination, and by other witnesses, from which he argues that a sale in Philadelphia by the brew-

ing company to the member was shown. But we are dealing here with the question of the propriety of the refusal of the trial judge to direct a verdict. Obviously, he could not direct a verdict in view of the testimony of these witnesses on their main examination which permitted the jury to find repeated sales at the club room, even though a contrary inference might have been drawn if the jury had seen fit to accept their statements on cross-examination, or the statements of other witnesses. The fact that many of the so-called envelope orders were not addressed to any brewing company, or to anybody at all, and that they were unstamped, seems to be inconsistent with the theory of a dealing between the individual members and Philadelphia brewers. True, some were directed to a certain named brewing company; but the only witness who pretends to speak as to what happened to these envelopes says that they went to a distributing company in Philadelphia and did not reach the brewing companies to whom they were addressed at all. Indeed, the evidence tends to show that the management of the club, and not the members individually, was dealing with the distributing company in Philadelphia, and that the management of the club was deriving its profit through a system of rebates, being rather extravagant allowances for the return of boxes and bottles.

"Upon the whole our conclusion is that the question of where and by whom the sales were made was a jury question.

"We find no error in the charge of the judge.

"These conclusions, in effect, dispose of every contention argued. The judgment below will be affirmed."

For the plaintiff in error, *Rex A. Donnelly.*

For the defendant in error, *Roscoe C. Ward,* prosecutor of the pleas, and *Edwin F. Miller.*

PER CURIAM.

The judgment under review will be affirmed, for the reasons set forth in the opinion of the Supreme Court.

*For affirmance*—THE CHANCELLOR, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, ACKERSON, JJ.  12.

*For reversal*—None.